Happy to have you with us today as we finish up our court day. And we have Judge Floyd on video. Judge Floyd, did you want to say something as we start? Yeah, I do. Thank you very much, Judge Harris. I don't know that many people know, but we have a lot of senior judges around here now, which we didn't used to have. And so the unique thing about being a senior judge every now and then, you get to sit with your successor. So my first sitting with Judge Benjamin is today, and I'm glad to welcome her. I took a sigh of relief when she got nominated, so I know she's going to do a great job. Thank you. Thanks, Judge Floyd. Well, thank you, Judge Floyd, and it is a pleasure to sit with you also. Right. We will hear argument in our first case, Shipton v. Baltimore Gas and Electric. And Ms. Banna, is that right? When you're ready. May it please the court. My name is Sonia Banna, and I represent the appellant and plaintiff in this action, Michael Shipton. This case is about an employer that fired an employee for misuse of FMLA leave for a symptom that was not included in the certification from his healthcare provider, and did so after the employee submitted a separate certification substantiating that he needed leave for that condition, and after the employer did an investigation that confirmed that his leave was used for that purpose. Counsel, can I ask you a question that sort of goes to what you said? I thought that he was terminated at least in part because first he submitted two certifications saying that he had symptomatic hypoglycemia, and then after taking leave for that for two years, he submitted a medical documentation saying he does not have that and he hasn't had it for the past two years. And I thought it was those inconsistent submissions that led to his termination. Judge Harris, certainly that is what the defendants would have you believe. Well, but I've seen the certifications. That is correct. It's in the record. It did happen. And we don't dispute that. Well, then why isn't that sufficient grounds for termination? One way or the other, one of those certifications was not true. I'm happy to explain the discrepancy. The undisputed facts and actually objective evidence in the record show that Mr. Shipton applied for and received FMLA leave for diabetes, not for hypoglycemia. Well, I looked at the certifications. The doctor said he needs to leave because he has symptomatic hypoglycemia. That's what they say. Of course. Okay. And then two years later, he submits a doctor's certification saying not only does he not have symptomatic hypoglycemia, but he has not had it for the last two years. Uh, Judge Harris, uh, Mr. Shipton's leave was used for neuropathy. It wasn't used for hypoglycemia. But it was, I'm sorry, it was authorized, authorized for hypoglycemia. It was authorized for diabetes. Uh, the employer- Based on a certification that he has hypoglycemia. The certification in the medical facts section certainly describes the symptoms of hypoglycemia as the reason why he needed to this work. And the length, the amount of leave that he was given was key precisely to those symptoms. When he, um, later applies for leave for neuropathy, he gets less leave because that is a less severe problem. Judge Harris, the employer's own internal records of the department that processes FMLA applications reflect that Mr. Shipton requested leave for diabetes and that he was approved to use leave for diabetes. Those records don't make any reference to hypoglycemia at all. Moreover, the records reflect that Mr. Shipton's leave was used for neuropathy. It was never- But he wasn't diagnosed with neuropathy until I think March or April of 2018. Long after he, he put in for leave. Judge Benjamin, that's actually not, not the case. Um, Mr. Shipton primarily suffered from, uh, neuropathy rather than hypoglycemia in 2017 and in 2018. Of his own, the medical records and the deposition testimony from, uh, the primary healthcare provider, Ms. Hammershock, clearly reflect that in, uh, April of 2018, in September of 2018, Mr. Shipton went to urgent care due to painful neuropathy in his feet. His primary issue was neuropathy and he took leave for neuropathy. He told his supervisor, uh, who is one of the individuals he was required to or nerve pain in his feet. He never took leave for hypoglycemia. Never. When his certificate, when the initial certification was completed, the, the, uh, healthcare provider, uh, he had recently reported an episode of hypoglycemia and the healthcare provider memorialized that in the certification. They didn't discuss what she was going to write. He simply told her he needed the paperwork completed because of absences for diabetes and she wrote, uh, uh, those symptoms because they were consistent with his recent history. But over the course of the two years that that physician's assistant treated him, he primarily complained of neuropathy. Then why did, then why did, well, it does, can I ask you a legal question? I just want to make sure I understand. If we put to one side, the claims that the district court found were time bound for a minute so that we're only talking about the termination, um, is your position that that's an interference claim or is it a retaliation discrimination claim? I appreciate the question. The, the, the position is that it is both. Uh, the evidence, the undisputed evidence in the record shows that Mr. Ship was entitled to take leave for neuropathy. He was entitled to take leave for, uh, diabetes related absences. So that's in fact what he was using. Mostly the interference claims are claims for sort of interfering with a prescriptive right. Like you didn't give me the notice I was entitled to. How is termination and interference claim? Uh, yes, it actually is an interference with Mr. Shipton's rights under, uh, section 2612 and section 26, under the circumstances of this case and 2613, uh, in so far as the employer fired him based on contextual allegations that he'd misused his leaves, uh, which obviously interfered with his, uh, continuing right to take intermittent FMLA leave. In addition, they did not timely inform him that they wanted a separate certification for neuropathy. Again, Mr. Shipton was always reporting and disclosing that his leave was used for neuropathy while we don't agree that he had to submit a separate certification to establish that need because neuropathy is a symptom of diabetes. Uh, certainly if they were going to require a certification, a separate one, they should probably inform him of that. And they didn't tell him that until April of 2018. As soon as they told him that he probably submitted a separate certification, substantiating that he needed leave for that purpose. There's no question that his leave was used for neuropathy or that he needed leave for neuropathy. He was not dishonest. This is not an employee who was dishonest. And if nothing else is made clear today, I want you to understand that the assertion that Mr. Shipton was dishonest is simply false. The testimony, deposition testimony of the lead investigator confirmed that he was honest. He did not lie. Two doctors, two doctors testified that he submitted inconsistent medical authorizations. One of them said he had hypoglycemia. The other one said he didn't. And I think even Mr. Shipton, perhaps because he's so honest during his deposition, conceded that those were inconsistent. On the face of the paperwork, it appears to be inconsistent, except or less you realize that the definition of hypoglycemia for purposes of a fitness review exam is completely different than what would be required to take intermittent leave for hypoglycemia. Obviously, the need for leave, the entitlement to take intermittent leave under the FMLA simply requires that the employee not be able to perform one or more essential functions. Given Mr. Shipton's- Ms. Hannah, let me ask you something about the law in this case. The judge applied the honest belief doctrine in the retaliation case. But if we disagree with that application and there was an analysis done under McDonnell Douglas, where is your prejudice under McDonnell Douglas? The prejudice under McDonnell Douglas? Yes. Josh? Well, in terms of the fact that they did not notify him promptly of the fact that they wanted a separate certification for diabetes, he obviously was deprived of the opportunity to promptly submit that documentation and therefore was left exposed to- I'm sorry, I see that my time is up. May I continue to answer the question? Just briefly, yes. That he was deprived of the opportunity to submit the certification, which he ultimately submitted immediately upon being asked to do so. Thank you very much. You've got some rebuttal time. Whenever you're ready. Thank you. May it please the court, I'm Erica Jacobson-White of Joseph Greenwald and Lake here today on behalf of the National Employment Lawyers Association, the National Institute for Workers' Rights, and A Better Balance. And we collectively are dedicated to advancing worker rights, promoting workplace fairness and equality, and to advocating for women, caregivers, and those who seek dignity when they're suffering from serious medical conditions or disabilities. Our organizations collectively are here to urge the court to reject the honest belief defense in FMLA cases. Fundamentally, the plain language of the statute doesn't allow for complete defense to lie if the employer acted in good faith or stated the other way, honestly believe that it didn't violate the statute. Section 2617 expressly states that an employer who violates 2615 shall be liable for damages. And the only exception to this mandatory penalty for violating the statute is the good faith language that appears in 2017 A1, A3. Can you let me just tell you where I have trouble with this argument. It makes sense to me for why you wouldn't have an honest belief defense to most interference claims. Like I didn't get my notice. The employer can't say, oh, I didn't think I had to give you notice. I honestly didn't know I had to do that. But we have held that employer intent is relevant to a termination claim. And if intent is relevant, because, you know, you can actually terminate someone who happens to be taking FMLA leave if that's not why you terminated him. And so once we're looking at the defendant's intent, I don't understand why. I mean, under McDonnell Douglas, just a genuine but mistaken belief is enough to defeat a pretext claim. So why would the rule be different here? Sure. Thanks for that question, Your Honors. So in an interference case that stems from 2614A, if the employee proved the entitlement to restoration because they were entitled to the leave in the first place, in other words, the employee proved that they had a serious health condition they otherwise qualified for rights under the statute, they were entitled to leave and the employer interfered. They fired them. OK, now the employee also has to prove that they suffered prejudice from this termination. OK, and that prejudice proof is where things kind of get stuck, I think, in this analysis. Ultimately, the regulations state in 825216A that the burden is shifted to the employer to prove that there was a lack of entitlement. So in other words, if the employee didn't take the leave for the reason that was stated, it's the employer's burden to prove that. Stated another way, in such a situation, the employee would suffer no prejudice. Well, Ms. White, let me ask you about the interference case. Now, do you agree with me that intent is not required under an interference claim? I do agree with you. And I think that the reason why the regulations shift that burden to the employer to prove the lack of entitlement is because ultimately, if the employer simply just honestly believed that they weren't entitled. But in fact, what the records will establish is that the employee was entitled to leave in the case that they were on leave at the time that they were terminated, which is when 2614 would come into play. In such a scenario, then the legislature has made clear that it's a reduction in damages. This is not a complete defense of liability. In fact, so the judge was wrong to apply the honest belief doctrine. I mean, I guess all that does is give us an employer an extra defense, which he's not entitled to. So was the judge right or wrong to apply the honest belief doctrine in this proscriptive relief case? Yes, we are. Yes, the honest belief defense has no place because there is no place for the honest belief defense in the statute in the plain language. So what what, in your view, happens if someone is terminated, not while they're on leave? This isn't about a restatement thing, just terminated. And they took leave like two years ago. And they say, you fired me because I took leave two years ago. And the employer says, no, we fired you because some kind of misconduct. If the employer genuinely believed and reasonably believed that that misconduct took place, but it turns out it didn't in any other civil statute, that would be a valid defense to liability for the employer. I honestly believed that this misconduct took place. And that is the reason I fired them, not for taking the leave. But you think it wouldn't work that way under the FMLA? No. And there's two reasons. The FMLA is not like any other employment discrimination statute. It was mirrored after the FLSA. And the congressional intent shows that it wanted its remedies to mirror those. I totally get that for your entitlement to the notice and to the leave. But when you're talking about a termination case where we have already held, the whole thing turns on the defendant's intent. Why would a defendant in an FMLA case not be able to rest on an honest and reasonable belief that there was some misconduct when they could under Title VII or under the Age Discrimination Act? That seems odd. Sure. I'm out of time. May I continue? OK, so there's two reasons. In an interference case, because in that scenario... So your colleague says that this termination case is an interference case. I have questions about that. But if we're going to treat termination cases as interference cases, we are saying that intent matters for at least some interference cases because we've said intent matters for termination. So now I think everything gets kind of messed up. So when we're talking about interference of the prescriptive rights to intermittent leave, I don't think intent matters. Because ultimately, if the employer were able to show that the employee was being disciplined for some reason other than their entitlement to FMLA leave, the employee would have suffered no prejudice. And therefore, they would not be able to prove their claim of interference. When it comes to retaliation, it's true that the McDonnell-Douglas burden-shifting test already allows that burden-shifting analysis. If the employer were able to establish pretext in such a scenario or establish legitimate non-discriminatory reason in such a scenario, the burden shifts back to the employee to establish pretext. In that scenario, if the employer terminated the employee based on an honest belief, it's our position that Congress intended that still only to be a reduction in liquidated damages because this is an entitlement statute. What Congress did is it created entitlement to benefits. These are minimum labor standards. They are akin to the minimum wage or to child labor laws. In the comparison, I think it becomes quite clear just because an employer says you're not entitled to overtime, the truth is you actually are, then you get paid. Thank you very much for your time. Ms. Marcus, your hand. Thank you, Your Honor. May it please the Court. My name is Elena Marcus, and along with my colleague, Adam Simons, with me here, we represent the defendants in this action. As the District Court laid out in detail in its decision, it found that the evidence presented by Mr. Shipton and his briefs and arguments failed to create a genuine dispute of material fact. The Court is clearly aware of the facts. I won't belabor them. I'll move into to try to answer some of the questions that you raised in your earlier questioning. Let me ask a question about the District Court use of the honest belief doctrine. You would agree that this Court has not adopted that? What I think the District Court did is just say that an employer can legitimately terminate an employee based on an honest belief that it engaged in misconduct. That is exactly what it said. The Court went on to find, based on the facts and the record, that the company did have an honest belief that Mr. Shipton had misused his sleeve and submitted conflicting documentation, and it went in to lay out all the facts. But what the Court didn't do, which is what I think they're suggesting it did, is it didn't actually apply an affirmative defense in any way. It didn't do what KLMCA did at all. So the District Court's use of honest belief language is much like this Court's use of genuine belief, real reason, true reason, in the way the Court looks at termination cases. So with respect to the interference claim, Atkins tells us, based on other cases as well, that Shipton has the burden of proving that he was entitled to an FMLA right or benefit, that he would deny that benefit, and that he was prejudiced. And as relevant in this case, he was entitled to leave for a serious health condition that rendered him unable to work, and he was entitled to restoration at the end of that leave. He got that. The record evidence shows that he applied for FMLA leave on three occasions during the relevant period. Before that, he was granted leave each time based on those certifications, and he was restored to his position each time. Because what we're talking about here is intermittent leave. He'd go out and he'd come back. He came back to his position each time. So he got everything he was entitled to under the Act. And as in Atkins, there is nothing he can show that he was denied that would change the outcome in this case. As Judge Harris, you've identified an employer can terminate an employee for suspected misuse of leave and for submitting conflicting documentation under any other employment situation. Nothing in the FMLA changes that. What I heard from opposing counsel in the argument was, well, this is different. He was entitled to leave in the future because he was certified for intermittent leave, potentially in the future. That can't be the standard because every employee has a possibility of using leave in the future. What we know is at the time the employer made the decision that it didn't, you know, just didn't understand how this conflicting documentation made any sense at all. He was at work. He was not, as Ms. Banya said, on leave, out on leave. So it's really not a claim about restoration. It's really, ultimately, he does not have an interference claim. And I think the court can affirm the district court on that basis. Let me ask you this about the interference claim. Actually, this is what I thought your opposing counsel was going to say. In that 2017 performance review, there's a lot of discussion about him being absent from work and taking time off from work. And he ends up, I believe, getting a B on his performance review. And of course, one could potentially view that as discouragement for taking FMLA, which would be, which could potentially lead to the interference case. I'm just curious to hear your position as to that. Sure. There's a couple of things. One, that is outside the statute of limitations. So in order to get to that, they need to prove a willful violation. And the district court correctly held they couldn't. But secondly, on the facts, the performance review does mention his leave. But it specifically separates his FMLA-protected leave from his other absences. And Mr. Groskup, his supervisor, testified that the basis for his review was his non-FMLA-protected absences and the fact that he damaged a very expensive piece of gas equipment and failed to report it. So I think that that's my answer to your question. Can I ask you, and you may have sort of touched on this before. So if someone is fired when they're not on leave and the allegation is, I was fired for taking leave in the past, is that an interference claim or is that a termination? I'm sorry, a retaliation claim. I believe that's a retaliation claim and it should be judged as such. I think we have some cases treating it as a retaliation claim, which seems to make logical sense. But then there was a new regulation that came out suggesting maybe it was an interference claim. There are certainly cases that muddy the water a little bit. There's some cases that say termination in some circumstances can be an interference claim. But when the facts are as they are here, that the termination is for suspected misconduct, then I think that really is a retaliation claim where, as I said, the employee got all the benefits they were entitled to and they were back at work. Right. And now they're arguing that you're punishing me after the fact by firing me. Because it does seem to me that we have more or less applied the honest belief doctrine through the McDonnell Douglas pretext lens when it comes to retaliation. And it just seems that if the exact same sequence of events can lead to either a retaliation claim or interference claim, as your colleague suggests, probably the standard ought to be the same both ways. It would be very weird if the entire standard shifted depending on which label a plaintiff used in her complaint for the same set of events. I agree completely. In addition, if we were to do that, that would add a layer of protection to employees that they don't have under the law generally. And I think this court has been clear that that simply isn't what the FMLA does. So, as I said, whether he was at work or not, or on leave, the company would have a right to investigate the claim during either one of those times, whether he's on leave or whether he was at work in order to make a decision. Is that correct? Yes, absolutely, Your Honor. The company would also have the right to terminate him if it found that he'd engaged in misconduct as the case was here. Whether he was on leave or at work. That's correct. Yeah, well, yes. Even if they'd come back to work if the investigation shows they had a basis for firing him, they could do that. Correct. And nothing in the FMLA suggests otherwise. That's right. So, as I said, I believe that this court can affirm the grant of summary judgment on the other cases they've cited and their argument is this honest belief defense. The court also should affirm the grant of summary judgment to the defendants on Mr. Shipton's retaliation case. The overwhelming evidence here established that EGE concluded that Mr. Shipton misused and submitted conflicting or contradictory medical paperwork and nothing in the evidence presented by Mr. Shipton disputes that at all. I just want to be clear. Mr. Shipton and Amiki argue that BGE is asking the court to rewrite the FMLA to add an additional layer of protection for employees. It is not. But they are. The baseline in any employment relationship is at will employment where the employer can terminate an employee for any reason or no reason as long as it's not an illegal reason. There can be no dispute that is a general matter. An employer is permitted to terminate an employee. It believes misused and submitted conflicting documentation. What Mr. Shipton and Amiki want this court to rule is, well, that's not true if the person has used FMLA or is using FMLA. I think the decisions of this court and the statute and the regulations make it clear that they are incorrect. I'm happy to answer any other questions you have. I think we're all set. Thank you very much for your time. Thank you. And Ms. Bonia, you have some rebuttal time. Ms. Bonia, actually, can I? I'm sorry, were you going somewhere? I would just, is the time correct? I don't think that, oh, it's correct. Great. Can I ask you, so we've had some discussion now about the honest belief doctrine and where it fits in, but I didn't really see you arguing in the district court against applying the honest belief doctrine rather than just saying it doesn't apply here because on the facts, this was not an honestly held belief. That's correct, Judge Harris. We really didn't belabor that point because in our view, it doesn't matter whether the doctrine is recognized by this circuit or not because the evidence shows that the employer did not have a genuine or reasonable belief that he misused his leave given that they knew the leave was used for an FMLA covered reason. If I may just respond to a couple of points raised by defense counsel. Defense counsel pointed out that Mr. Shipton was granted leave prior to his use of intermittent leave. Those leaves were continuous leave and employers have a special heartburn when it comes to intermittent leave. It's the leave that is most burdensome for supervisors and managers to have to manage. Judge Benjamin, as you pointed out, Mr. Shipton's 2017 performance review by a manager or supervisor who was supposedly friendly to him includes extensive comments complaining about the fact that his leave is burdensome and imposes on the rest of the employees. If employers were left to their own devices, they would fire Mr. Shipton and 38 million other Americans who have diabetes even though they are capable of working and we as a country need them to be part of the workforce. Defense counsel pointed out that all employees could take leave in the future. Not all employees have actually submitted three certifications substantiating that they have diabetes and diabetes related complications that necessitate absence from work. With respect to Mr. Shipton's interference claim, I just want to emphasize that there is no dispute. There is no genuine dispute that he was approved to take leave for diabetes. The belated argument that his leave was limited to absences for hypoglycemia was made up to justify terminating him. That is why the response to that evidence from defense counsel in their response brief is conspicuously absent. They can't respond to it and they can't overcome it. As a matter of law, the certifications that were submitted for Mr. Shipton established an entitlement to take leave for diabetes. Under the regulations, he was entitled to, and in fact, the instructions he received directed him to report every absence related to that condition as athema lay leave. There's no question that had defendants inserted the entire certification form in their brief instead of a selective and misleading excerpt, you would see that the information in those forms reflects that the forms pertained to diabetes. It reflected the year that he was diagnosed with diabetes and it reflected the treatment that he'd been receiving for diabetes. There is no dispute over this issue. And because he was entitled to use leave for absences related to diabetes, defendants to knowingly fire him for using leave for diabetes-related symptoms and complications, and again, it's not a dispute, they don't challenge that, is a knowing violation of the athema lay. Just one question. So one of the other things that they cite for reasons for his termination is this investigation and that he's brought in during his investigative period and asked questions and he can't explain why there's a discrepancy between the two FMLA requests. I'm just curious to hear your response as to that. That's simply false. The contemporaneous evidence from the investigation, specifically the interview notes that were explained what he was saying all along, which is that he thought his approval covered all absences related to diabetes. In fact, he was correct, that he was using leave for neuropathy, that he never used leave for hypoglycemia, that he did in fact have hypoglycemia in 2017 when the initial certification was submitted, but that he had started seeing a specialist in March of 2018 and that his condition improved. It's important to look at the actual underlying documents. What he told Exelon Occupational Health Services in April of 2018, what he told his supervisor, it's all consistent. There's no inconsistencies. I got to disagree with you there. I understand your argument about the misuse of leave. Maybe there's a jury question here on misuse of leave and whether he actually believed that his leave, although all of the medical documentation was for hypoglycemia, whether he genuinely, whether he maybe had an honest belief that he was allowed to take leave for any diabetes-related condition. But the problem I have is with two years into this, the submission of the doctor's certificate saying not only he doesn't have hypoglycemia now, but also he didn't have it for the last two years. Now that his license, his driving license is on the line, he now has a doctor saying there's no problem with driving and hypoglycemia because I don't have it and I haven't had it in two years. That to me seems like it's just very hard to get around the documents and the record evidence on that. I'd like to help you get around that, Judge Harris. Again, and maybe I've not been clear about this, what would be required to justify an hypoglycemia is simply that the employee is unable to perform any one function, essential function of their job. What is required to be disabled or unable to have a commercial driver's license is hypoglycemia that results in incapacity, hospitalization, comas. But that's not, the letter doesn't say he's had hypoglycemia for two years, but it's  doesn't say that. It just says hypoglycemia. No way. Never happened. Judge Harris, I think that defendants are probably happy that we're talking about this, but ultimately it's not a material issue because the fact is he didn't use lead for hypoglycemia. He used it for neuropathy. But whatever he did, like if I'm an employer, I can't have a rule that like you can't lie to me in your medical documentation. Judge Harris, it wasn't a lie. Well, one of them was he either had the symptomatic hypoglycemia or he didn't. He submitted documentation that is just facially inconsistent on that point. Judge Harris, diabetes is a condition that often results in hypoglycemia and hyperglycemia. A person can, I'm sorry, may I just finish this question? Yeah, go ahead. A person can generally be, generally have high blood sugar and also experience episodes of hypoglycemia. And so the fact Mr. Shiffman had an episode of hypoglycemia in August of 2017, that was not a lie. And it's not a lie to suggest that he may have had episodes of hypoglycemia after that. But the root point, he didn't take lead for that. He took it for neuropathy. If the defendants, if this case is allowed to stand, it will essentially allow employers to seize on any minor discrepancy, even if it's immaterial, to deny leave to someone who has demonstrated that they have the exact kind of condition that the intermittent leave provisions mention as the kind of condition that they should be entitled to take intermittent leave for. Thank you very much. We appreciate the assistance with this case. We'll come down and greet counsel and then move on to our next case. Oh, actually, we're going to take a very brief recess for some technological things and then we will be back.
judges: Pamela A. Harris, DeAndrea Gist Benjamin, Henry F. Floyd